# EXHIBIT A

**KARPF, KARPF & CERUTTI, P.C.**
By: Ari R. Karpf, Esq.
3331 Street Road, Ste. 128
Two Greenwood Square
Bensalem, PA 19020
P - (215) 639-0801
F - (215) 639-4970

|  |  |  |
|---|---|---|
| ANTHONY RUFFINO<br>95 A Halls Croft Road<br>Freehold, NJ 07728 | : <br> : <br> : <br> : | SUPERIOR COURT OF NEW JERSEY<br>MIDDLESEX COUNTY LAW DIV. |
| Plaintiff, | : <br> : | CIVIL ACTION |
| v. | : <br> : | DOCKET NO.: |
| WRS ENVIRONMENTAL<br>SERVICES, INC., d/b/a WRS<br>17 Old Dock Road<br>Yaphank, NY 11980<br>and<br>MICHAEL RODGERS<br>17 Old Dock Road<br>Yaphank, NY 11980<br>and<br>PEDRO GUERRA<br>17 Old Dock Road<br>Yaphank, NY 11980<br>and<br>COURTNEY HODELL<br>17 Old Dock Road<br>Yaphank, NY 11980 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **COMPLAINT WITH JURY DEMAND** |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

Plaintiff Anthony Ruffino (hereinafter referred to as "Plaintiff" unless otherwise indicated)

hereby complains as follows against Defendants.

## I.  INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Defendants of federal and state laws including the Fair Labor Standards Act ("FLSA - 29 U.S.C. § 201 *et. seq.*), the New Jersey Wage and Hour Law ("NJ WHL" – N.J.S.A. §§ 34:11-56a, *et seq.*) and the New Jersey Wage Payment Law ("NJ WPL" – N.J.S.A. §§ 34:11-4.1, *et. seq.*), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff was not properly paid wages mandated by state and federal law(s), and was discriminatorily removed from a job position. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II.    PARTIES

2.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

3.      Plaintiff is an adult individual and citizen of New Jersey with an address as set forth above.

4.      Defendant WRS Environmental Services, Inc., d/b/a WRS (hereinafter "Defendant WRS") is registered as a foreign entity in New Jersey and is incorporated as a domestic legal entity under the laws of New York State (registered at the above-captioned address).  Defendant WRS has operated for decades providing environmental, utility and industrial services to third-party businesses in several states along the Eastern United States (and it operates from various physical locations, including a location in New Jersey wherein Plaintiff was based and/or employed).

5.      Defendant Michael Rodgers (hereinafter "Defendant Rodgers") is the owner, operator and highest level active manager of Defendant WRS.

2

6.     Defendant Pedro Guerra (hereinafter "Defendant Guerra") has been employed with Defendant WRS since in or about 2004, and at all times relevant to this lawsuit has been employed as a Regional Operations Manager for Defendant WRS.

7.     Defendant Courtney Hodell (hereinafter "Defendant Hodell") has been employed with Defendant WRS since in or about 2005, and she has held several management positions - but at all times relevant to this lawsuit – was employed as a Vice President of Human Resources and Regulatory Compliance.

8.     At all times relevant herein, Defendants' agents acted at the direction of and/or for the benefit of Defendants in the course and scope of their employment. The individual Defendants to this action are sued personally because they were direct actors in each of the actions set forth herein, and every law in which Plaintiff is suing under permits individually liability of Defendant WRS management.

### III.     FACTUAL BACKGROUND

9.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff was hired by Defendant WRS on about March 28, 2016, and Plaintiff worked from and was considered based within Defendant WRS's location at 5 Kellogg Court, Edison, New Jersey 08817 (in Middlesex County).

11.     Plaintiff's management hierarchy remained consistent during his work tenure. He was supervised by Defendant Guerra who worked for Defendant WRS as a Regional Manager. Plaintiff was indirectly supervised by Defendant WRS's owner, Defendant Rodgers. Both of these high-level managers directly oversaw and made decisions concerning Plaintiff's job duties, job changes over time, payroll, overall compensation, and his terms and conditions of employment.

3

12.    Defendant Courtney Hodell at all times during Plaintiff's employment oversaw payroll from a human resources and regulatory standpoint.  She was also the recipient of many questions and concerns about payroll violations, and she orchestrated, continued, justified and at times attempted to conceal ongoing state and federal wage violations (as explained more *infra*).

### (A)  *Plaintiff's First Claim – Failure to Pay Overtime to Plaintiff as Dispatcher*

13.    Plaintiff was hired by Defendant WRS in March of 2016; and upon hire, Plaintiff worked as a dispatcher.

14.    Plaintiff worked for Defendant WRS as a dispatcher until in or about early December of 2016 (a period of roughly 8.5 months).

15.    While working as a dispatcher for Defendants, Plaintiff consistently often worked 50 – 70 hours per week (working often from 5 AM to 7:30 PM (or earlier or later as needed) and also working on weekends).

16.    Plaintiff performed routine work as would be expected of a dispatcher filling out paperwork for employee-customer matters, manifests and interacting with drivers and employees about their work statuses and timing of appearance or completion.  Plaintiff did not supervise employees in this capacity (i.e. hire, terminate, evaluate, or any other traditional supervisory duty), make business policy changes or decisions, or exercise any company-wide discretion.

17.    Plaintiff was paid by Defendants when he worked as a dispatcher at a set salary, and he was <u>never</u> properly at a rate of time and one half for all of his overtime hours.[1]

---

[1] Plaintiff was paid a salary and Defendants claimed some overtime was built into an expected 50-hour workweek. But Defendant did this to mask that Plaintiff was actually just paid a salary period, and he should of received overtime based upon the entire salary after 40 hours per week.  Additionally, Plaintiff was never paid for overtime when he consistently worked over 50 hours per week.

18.     Merely being paid a salary is not indicative of whether an employee is legally entitled to overtime, and at all times relevant during Plaintiff's performance as a dispatcher, he was non-exempt <u>and</u> legally entitled to overtime pay (despite being paid by salary).[2]

19.     Defendants also failed to maintain legally-mandated time records accurately for all time worked by Plaintiff when he was employed as a dispatcher, and thus Plaintiff's estimates of time worked shall be accepted as accurate.[3]

20.     As a direct consequences of Defendants' aforesaid non-payment of overtime, Plaintiff is owed overtime for approximately 36 weeks of working as a dispatcher at 10-30 hours of overtime per week.

### (B) Plaintiff's Second Claim – Discriminatory & Retaliatory Job Change

21.     Plaintiff required a medical leave of absence from in or about the first week of December 2016 through in or about the first week of February 2017 (a period of approximately 2 months).

---

[2] See e.g. Sehie v. City of Aurora, 432 F.3d 749 (7th Cir. 2005)(Summary Judgment granted in favor of dispatchers under FLSA); Cleveland v. City of Los Angeles, 420 F.3d 981 (9th Cir. 2005)(finding dispatcher not exempt under FLSA); Marshall v. Nat'l Freight, Inc., 1979 WL 1977, at *8 (D.N.J. 1979) (dispatcher cannot meet argued overtime exemptions); Hill v. RL Carriers, Inc., 690 F.Supp.2d 1001 (N.D. Cal. 2010)(denying summary judgment of employer when employer asserted dispatcher worked primarily as manager because evidence reflected that primary duties of employee were as dispatcher); Alvarez v. Key Transp. Serv. Corp., 541 F.Supp.2d 1308, 1313-14 (S.D.Fla.2008) (denying summary judgment on defendant's motion that car dispatcher was exempt from overtime); Iaria v. Metro Fuel Oil Corp., WL 222373 (E.D. N.Y. 2009)(denying summary judgment of employer when employer asserted dispatcher worked primarily as manager because evidence reflected that primary duties of employee were as dispatcher).

[3] See Section 11(c) of the FLSA, which provides that every employer "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him...." 29 U.S.C. § 211(c) (1982 & West Supp.1988). It is well settled that the employer bears the burden of keeping accurate wage and time records, and that the duty cannot be delegated to employees. Williams v. Tri-County Growers, Inc., 747 F.2d 121, 127-28 (3d Cir.1984); Castillo v. Givens, 704 F.2d 181 (5th Cir.1983), cert. denied, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1988). Once the burden shifts to the employer, if the employer fails to show either the precise amount of hours worked by the employee or negate the reasonableness of the inferences drawn from the employee's evidence, "the court may then award damages to the employee, even though the result be only proximate." Seto, 790 F.2d at 1448, quoting Mount Clements Pottery, 328 U.S. at 688, 66 S.Ct. at 1192.

22. The aforesaid December 2016 – February 2017 medical leave was necessitated by Plaintiff's serious back problems, which required treatment, therapy and surgery (all under the observation and direction of medical practitioners).

23. Plaintiff's aforesaid health problems limited his ability to walk, perform manual tasks and other life activities. Plaintiff returned to work in February of 2017 from his medical leave advising Defendants of his need for light duty, which still enabled Plaintiff to perform all essential and core job duties of a dispatcher.

24. It is well established that a medical leave of absence is a reasonable accommodation, and Plaintiff indeed provided all requisite information to Defendants for such an accommodation through early February of 2017.[4]

25. Upon returning to work, Plaintiff was informed by Defendants that he was being replaced despite that Plaintiff had performed his prior job well, had no prior discipline, and solely because he took a medical leave of absence (a universally recognized medical accommodation).

26. It was a very reasonable accommodation to maintain Plaintiff's prior job position of dispatcher (and same is legally required). However, Plaintiff was discriminatorily and retaliatorily removed without any real or meaningful finite job position initially being told he would perform some safety duties (which last about 1-2 months) but then was converted to a truck driver-Equipment Operator.

---

[4] The NJ LAD and ADA are interpreted identically with respect to accommodations. *See e.g. Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F.Supp.2d 694 (E.D. PA 2010)(time off from work, even up to 3 months can constitute a reasonable accommodation under the ADA); *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004)(federal courts have permitted leave to be a reasonable accommodation under the ADA); *Shannon v. City of Philadelphia*, WL 1065210 (E.D. Pa. 1999)(time off from work for an extended period of time is a reasonable accommodation under the ADA).

27.    The role of Equipment Operator had less upward mobility opportunity, paid less than Plaintiff earned as a dispatcher, was labor intensive, and was an objectively more manual and less desirable job position.

28.    Plaintiffs' aforesaid job change was a clear and unequivocal act of discrimination and retaliation in violation of the NJ LAD.

### *(C) Plaintiff's Third Claim – Unlawful Failure to Pay Wages*

29.    After Plaintiff had his job position changed to truck driver, which took place in or about March of 2017, Defendants continued their pattern of engaging in clear wage and compensation violations towards employees (including but not limited to Plaintiff).

30.    Specifically, Defendants on a company-wide basis knowingly and unlawfully reduce actual hours worked and intentionally underpay employees.

31.    By way of undeniable and a clear example of Defendants' egregious wage violations on a company-wide basis, Plaintiff provide the following analysis for the payroll week of 8/23/17 to 8/29/17 (which was consistent in all weeks worked):

   (a) Defendant has a written policy whereby: (1) employees working more than 8 hours in a day are paid at a rate of "one and one-half the straight time rate;" (2) employees working on Saturdays are paid "at one and one-half the straight time rate;" (3) employees working on policy-specified holidays are paid at "twice the straight time hourly rate;" and (4) employees working on Sundays are paid at a rate of "twice the straight time hourly rate." See Payrate Policy, attached hereto as "Exhibit A." **These are merely guaranteed-pay rates by Defendant WRS for hours worked**.

   (b) Because Defendants did retain records for hourly paid employees, Defendants do in fact have hourly timekeeping records for Plaintiff when he was a truck driver. In the week of 8/23/17 to 8/29/17, Defendant's timekeeping records unequivocally demonstrate Plaintiff *actually worked* 64 hours. *See* timekeeping records for week of 8/23/17 to 8/29/17, attached hereto as "Exhibit B."

   (c) However, during this same workweek (8/23/17 to 8/29/17), Plaintiff was in fact *only paid* for working a total of 58 hours. *See* 8/23/17 to 8/29/17 Payroll Pay Stub, attached hereto as "Exhibit C." In other words, based upon Defendant's

own recordkeeping and payroll, Plaintiff was shorted, docked and reduced in pay by a total of 6 hours during the 1-week pay period.

32.     In every week in which Plaintiff worked for Defendants, his compensation was illegally reduced. He expressed concerns to Defendants (including the aforementioned management). However, Plaintiff was told *despite that he actually worked those hours* he was having his pay reduced because Defendants provided billing to third parties and since some work he performed couldn't be billed to third parties, his pay was hence reduced. This is in fact an illegal company-wide practice of theft of wages by Defendants, and Plaintiff is remains owed wages for every week he worked for Defendants as a truck driver.[5]

33.     In addition to theft of wages, Defendants also commit other wage violations against employees, which include but are not limited to:

(1) They at times add in breaks that employees such as Plaintiff do not in fact get to take and otherwise manipulate timekeeping records;

(2) They do not consider in timekeeping all hours even worked including wage-mandated travel time between work sites and Defendants' work location(s);

(3) They illegally round down minutes and hours worked; and

(4) Defendants intentionally underpay employees at specified wage rates. For example, Plaintiff's job with Defendants from March 2017 through late September 2017. Plaintiff's mandated pay rate was specified per policy to be $26.15 per hour (as adjusted from time to time). However, Defendants often pay Plaintiff at a rate of Technician which was at least $3.00 less per hour worked to save money. Plaintiff at all times met the definition, was employed as and worked as a Truck Driver – Heavy Equipment Operator but Defendant shaved Plaintiff's income by underpaying him for certain hours as a Technician despite that other employees (without a Commercial Driver's License, which Plaintiff had) were paid solely as Technicians.

---

[5] How or what a business is paid from a third party has nothing whatsoever to do with an a business's obligation to pay its own employees for physical hours worked.

34.    All of Defendants' actions as aforesaid were intentional, knowing violations of wage laws.  Defendants systematically withhold and in essence steal earned wages from their employees. Defendants' recklessness and willful disregard for local, state and federal regulations is blatant (even to further extremes of them knowingly permitting a Hispanic employee to drive under 2 separate identities to avoid state and/or federally restricted drive times).[6]

35.    Due to Defendants' actions as set forth in this Complaint, Plaintiff elected to separate his employment in September of 2017.

### First Cause of Action
### Violations of Fair Labor Standards Act ("FLSA") and the NJ Wage Hour Law ("NJ WHL")
### (Failure to Pay Overtime Wages)
### - Against all Defendants -

36.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37.    The FLSA and NJ WHL are interpreted identically and mandate overtime compensation at a rate of time and one half for all hours worked over 40 hours per week.

38.    Defendants are an employer as defined by the FLSA and NJ WHL (and the laws permit individual liability of management personally overseeing or responsible for compensation of employees).

39.    This first cause of action only applies to Plaintiff's unpaid overtime compensation when he worked for Defendants as a dispatcher (from in or about March of 2016 through in or about December of 2016), facts relative to Plaintiff's "First Claim" above.

---

[6] This is intended solely to be one of the more extreme examples but is by no means an exhaustive list of state or federal infractions committed consistently by Defendants.  And the purpose of the illustration is solely to evidence a knowledge and intent to violate employee-related laws for purposes of penalty, liquidated or punitive damages (and to demonstrate the absence of mistake in a potential defense of innocent errors).

40.     Defendants' actions of failing to pay Plaintiff overtime constitute violations of the FLSA and the NJ WHL.

### Second Cause of Action
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
#### (Discrimination, Failure to Accommodate & Retaliation)
#### - Against All Defendants -

41.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42.     Plaintiff only required a 2-month medical accommodation of a medical leave, and he was instead moved to an hourly laborer position and not reinstated to the same or similar position (also reducing his overall compensation / benefits).

43.     Defendants were directly involved, made the joint decision, and knowingly failed to accommodate Plaintiff in addition to taking a discriminatory and retaliatory action against Plaintiff in or about February of 2017.

44.     Defendants' aforesaid conduct constitutes clear violations of the NJ LAD.  And this second cause of action relates only to Plaintiff's "Second Claim" in his factual section above.

### Third Cause of Action
### Violations of the New Jersey Wage Payment Law ("NJ WPL")
#### (Improper and Non-Payment of Wages)
#### - Against All Defendants -

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     As set forth in Plaintiff's "Third Claim" *supra*, Plaintiff was not paid all wages due and owed to him from in or about early 2017 through September of 2017.

47.     These actions constitute clear violations of the NJ WPL and other wage regulations of New Jersey mandating proper, timely and full payment of promised wages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.  Defendants are to promulgate and adhere to a policy prohibiting discrimination, payroll violations, and retaliation in the workplace;

B.  Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, and benefits. Plaintiff should be accorded those benefits illegally withheld from the date her employment was first terminated until the date of verdict;

C.  Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions (as permitted under the NJ LAD);

D.  Plaintiff is to be awarded liquidated and punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future (as permitted under applicable law(s));

E.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law in addition to any multiplier(s) that this Court might find applicable;

G.  This Court should maintain jurisdiction over the instant action to ensure full compliance with its Orders therein until such time it is satisfied that its Orders and dictates have been complied with in full by Defendant;

H.  Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esquire

Dated:  October 25, 2017

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**KARPF, KARPF & CERUTTI, PC**

By: _____

Ari R. Karpf, Esquire

## RULE 4:5-1 CERTIFICATION

1.     I am licensed to practice law in New Jersey, and I am responsible for the above-captioned matter.

2.     I am aware of no other matter currently filed or pending in any court in any jurisdiction which may affect the parties or matters described herein.

**KARPF & KARPF, P.C.**

By: _____

Ari R. Karpf, Esquire

## DESIGNATION OF TRIAL COUNSEL

Ari R. Karpf, Esquire, of the law firm of Karpf, Karpf & Cerutti, PC, is hereby designated trial counsel.

**KARPF & KARPF, P.C.**

By: _____

Ari R. Karpf, Esquire

# Exhibit A

The Employer agrees to deduct and forward to the Financial Secretary of the Local Union, upon receipt of a voluntary written authorization, the additional working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union by laws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.  Working dues of such members shall be withheld on a weekly basis, as of the first day of employment.  Union dues will be forwarded to the local union on a monthly basis. All dues withheld in a month must be received by IBEW Local Union 94 no later than the fifteenth (15th) of the following month with a monthly report.

## ARTICLE V – EMPLOYER'S RIGHTS

**Section 5.01**  The Union understands the Employer is responsible to perform the work required by its customers.  The Employer shall therefore have no restrictions except those specifically provided for in the Agreement, to manage, and maintain the efficiency of its business and personnel; to control its facilities and operations; to shut down its facility or operations or any part thereof temporarily or permanently; to direct the work force; to increase or decrease the work force and determine the number of employees needed; to hire, transfer, promote, demote, and maintain the discipline and efficiency of its employees; to lay off employees; to discipline and discharge employees for just cause; to specify work requirements; to require overtime work; to assign work and decide which employees are qualified to receive work assignments; to adopt rules of conduct, appearance and safety.  To determine the type and scope of work performed; to determine the methods, processes, means and places of providing services or products; to purchase services or materials from any supplier whatsoever; to determine the location and relocation of facilities or parts thereof; and to effect technological changes. During the initial six (6) months of employment the company has the right to terminate the "new employee" for any reason and the employer shall not be subject to any grievances.

## ARTICLE VI – NORMAL WORKING HOURS AND OVERTIME
## AND WORKING CONDITIONS

**Section 6.01**  Eight (8) consecutive hours between 6:00 a.m. and 6:00 p.m. Monday through Friday with thirty (30) minutes for a lunch period shall constitute a work day.  The normal starting and quitting time shall be 7:00 a.m. and 3:30 p.m. respectively.  The lunch period shall be between the hours of 11:00 a.m. and 1:30 p.m.  All hours worked prior to or after the normal work hours on a normal workday shall be paid at one and one-half the straight time rate.

**Section 6.02**  Four (4) consecutive ten (10) hour days may be worked at the straight time hourly rate; Monday through Thursday or Tuesday through Friday.  All hours worked prior to or after the agreed upon 10 hour schedule shall be paid at time and one half the straight time rate.  All hours worked on scheduled days of rest shall be paid at time and one half the straight time rate except as stipulated in section 6.03.  The application of this work week must be mutually approved by the Union and the Employer prior to implementation.  In addition any variations in starting times of the actual days worked must be agreed upon by the Union and the Employer prior to implementation.

**Section 6.03**  All employees covered by this agreement who work on Saturdays will be paid at one and one-half (1 ½) the straight time hourly rate.  All employees who work on Holidays named shall be paid twice (2x) the straight time hourly rate.  All employees who work Sundays shall be paid at the rate of twice (2x) the straight time hourly rate.

# Exhibit B



**WRS**
ENVIRONMENTAL SERVICES   V3.2

DEC PERMIT # 1A-415
EPA ID # NYR000188490

Job #   10549
Client:   PSEG
Contact:   Ken Lawrence
Location of Work:   Stuyvesant ave, Union NJ
Scope of Work:   Hydro excavation of Pole holes

PO #   5000004651
NYSDEC#
PM:   Pole holes

Date:   8-24-2017
Job Completed:
Restoration Needed:

| Truck # | Personnel | Title | Travel Start | At Work Site | Break | Left Work Site | Left Disp. Facility | Travel End | Total Hours |
|---|---|---|---|---|---|---|---|---|---|
| 200 | Dustin Garrabrant | Tech Oper | 6 AM | 7 AM | 1/2 | 4 PM | 430 PM | 530 PM | 11 |
| 143 | Anthony Ruffino | Oper | 6 AM | 7 AM | 1/2 | 4 PM | 430 PM | 530 PM | 11 |

**Work Performed:**
Arrived on site met with John from Traffic Plan to go over scope of work and where to cone off work area. Set up equipm
started to hydro excavate soil for Pole holes. During hydro excavation we encountered water. Truck 143 left on site
Holes completed
60506,61038,66266 move hole to other side of pole

| Type of Material | Total Qty | | Waste Location |
|---|---|---|---|
| Liquid Drum | | /Drum(s) | |
| Solid / Debris Drum | | /Drum(s) | |
| Solid / Debris Bulk | 3 | /Yds | Vauxhall Substation |
| Liquid Bulk | | /Gal | |

| Box # | Pick Up | Drop Off | Disposal Location |
|---|---|---|---|

| Materials | Equipment | Sub |
|---|---|---|
| Solids | On site | |
| | RT3407, RT3075, RT2898 | |
| | Boxes in Franklin Yard | |
| | RT4008, RT3867, RT1494 | |
| | RT1495 | |

WRS _(signature)_   DATE 8-24-2017   CUSTOMER _(signature)_

Anthony Ruffino   Ken Lawrence

**Print Name**   **Approval**   **Print Name**

**"PROUD TO BE A UNION COMPANY"**



**DEC PERMIT # 1A-415**
**EPA ID # NYR000188490**

**ENVIRONMENTAL SERVICES** V3.2

| | | | |
|---|---|---|---|
| **Job #** 10549 | **PO #** 5000004651 | **Date:** 8-25-2017 | |
| **Client:** PSEG | **NYSDEC#** | **Job Completed:** | |
| **Contact:** Ken Lawrence | **PM:** Pole holes | **Restoration Needed:** | |

**Location of Work:** Axton Ave, Union NJ

**Scope of Work:** Hydro excavation of Pole holes

| Truck # | Personnel | Title | Travel Start | At Work Site | Break | Left Work Site | Left Disp. Facility | Travel End | Total Hours |
|---------|-----------|-------|--------------|--------------|-------|----------------|---------------------|------------|-------------|
| 200 | Dustin Garrabrant | Tech | 6 AM | 7 AM | 1/2 | 230 PM | 3 PM | 4 PM | 9.5 |
| 143 | Anthony Ruffino | Oper | 6 AM | 7 AM | 1/2 | 230 PM | 3 PM | 4 PM | 9.5 |

**Work Performed:**

Arrived on site met with John from Traffic Plan to go over scope of work and where to cone off work area. Set up equipm
started to hydro excavate soil for Pole holes. During hydro excavation we encountered water. Truck 143 left on site
Holes completed
60504,60971,60972

| Type of Material | Total Qty | | Waste Location |
|------------------|-----------|---|----------------|
| **Liquid Drum** | | /Drum(s) | |
| **Solid / Debris Drum** | | /Drum(s) | |
| **Solid / Debris Bulk** | 3 | /Yds | |
| **Liquid Bulk** | | /Gal | Vauxhall Substation |

| Box # | Pick Up | Drop Off | Disposal Location |
|-------|---------|----------|-------------------|
| | | | |

| Materials | Equipment | Sub |
|-----------|-----------|-----|
| Solids | On site | |
| | RT4008, RT1494,RT2898 | |
| | Boxes in Franklin Yard | |
| | RT3075, RT3407,RT3867 | |
| | RT1495 | |

**WRS** _Anthony Ruffino (signature)_          **DATE** 8-25-2017          **CUSTOMER** _Ken Lawrence (signature)_

**Signature**                                                                          **Signature**

Anthony Ruffino                                                                      Ken Lawrence

**Print Name**                          **Approval**                          **Print Name**

**"PROUD TO BE A UNION COMPANY"**



**DEC PERMIT # 1A-415**
**EPA ID # NYR000188490**

ENVIRONMENTAL SERVICES   V3.2

| | | | |
|---|---|---|---|
| Job # | 10549 | PO # | 5000004851 |
| Client: | PSEG | NYSDEC# | |
| Contact: | Ken Lawrence | PM: | Pole holes |
| Location of Work: | Axton Ave, Union NJ | | |
| Scope of Work: | Hydro excavation of Pole holes | | |

Date: 8-26-2017
Job Completed:
Restoration Needed:

| Truck # | Personnel | Title | Travel Start | At Work Site | Break | Left Work Site | Left Disp. Facility | Travel End | Total Hours |
|---|---|---|---|---|---|---|---|---|---|
| 200 | Dustin Garrabrant | Tech | 6 AM | 7 AM | 1/2 | 4 PM | 430 pm | 530 PM | 11 |
| 143 | Anthony Ruffino | Oper | 6 AM | 7 AM | 1/2 | 4 PM | 430 pm | 530 PM | 11 |

**Work Performed:**

Arrived on site met with John from Traffic Plan to go over scope of work and where to cone off work area. Set up equipm
started to hydro excavate soil for Pole holes. During hydro excavation we encountered water. Truck 143 left on site
Holes completed
60970,60973,60974,60845,60571,64565,64566

| Type of Material | Total Qty | | Waste Location |
|---|---|---|---|
| Liquid Drum | | /Drum(s) | |
| Solid / Debris Drum | | /Drum(s) | |
| Solid / Debris Bulk | 5 | /Yds | Vauxhall Substation |
| Liquid Bulk | | /Gal | |

| Box # | Pick Up | Drop Off | Disposal Location |
|---|---|---|---|
| | | | |

| Materials | Equipment | Sub |
|---|---|---|
| Solids | On site | |
| | RT4008, RT1494,RT2898 | |
| | Boxes in Franklin Yard | |
| | RT3075, RT3407,RT3867 | |
| | RT1495 | |

WRS _(signature)_ Anthony Rff   DATE 8-26-2017   CUSTOMER _(signature)_

Signature
Anthony Ruffino

Signature
Ken Lawrence

Print Name                   Approval                   Print Name

**"PROUD TO BE A UNION COMPANY"**



**DEC PERMIT # 1A-415**
**EPA ID # NYR000188490**

| | | | |
|---|---|---|---|
| **Job #** 10549 | **PO #** 5000004651 | **Date:** 8-27-2017 | |
| **Client:** PSEG | **NYSDEC#** | **Job Completed:** | |
| **Contact:** Ken Lawrence | **PM:** Pole holes | **Restoration Needed:** | |

**Location of Work:** Earl Ave, Union NJ

**Scope of Work:** Hydro excavation of Pole holes

| Truck # | Personnel | Title | Travel Start | At Work Site | Break | Left Work Site | Left Disp. Facility | Travel End | Total Hours |
|---------|-----------|-------|-------------|-------------|-------|---------------|-------------------|-----------|-------------|
| 200 | Dustin Garrabrant | Tech Oper | 6 AM | 7 AM | 1/2 | 430 PM | 5 PM | 6 PM | 11.5 |
| 143 | Anthony Ruffino | Oper | 6 AM | 7 AM | 1/2 | 430 PM | 5 PM | 6 PM | 11.5 |

**Work Performed:**

Arrived on site met with John from Traffic Plan to go over scope of work and where to cone off work area. Set up equipm started to hydro excavate soil for Pole holes. During hydro excavation we encountered water. Truck 143 left on site Holes completed
62720,62721,62722,63917,65379,65378,62297 Partial

| Type of Material | Total Qty | Waste Location |
|------------------|-----------|----------------|
| Liquid Drum | /Drum(s) | |
| Solid / Debris Drum | /Drum(s) | |
| Solid / Debris Bulk | 5 /Yds | Vauxhall Substation |
| Liquid Bulk | /Gal | |

| Box # | Pick Up | Drop Off | Disposal Location |
|-------|---------|----------|-------------------|
| | | | |

| Materials | Equipment | Sub |
|-----------|-----------|-----|
| Solids | On site | |
| | RT4008, RT1494,RT2898 | |
| | Boxes in Franklin Yard | |
| | RT3075, RT3407,RT3867 | |
| | RT1495 | |

**WRS** *(signature)* **DATE** 8-27-2017 **CUSTOMER** *(signature)*
*Signature* *Signature*

Anthony Ruffino Ken Lawrence

**Print Name** **Approval** **Print Name**

**"PROUD TO BE A UNION COMPANY"**



**DEC PERMIT # 1A-415**
**EPA ID # NYR000188490**

| | | | |
|---|---|---|---|
| **Job #** 10549 | **PO #** 5000004651 | | **Date:** 8-28-2017 |
| **Client:** PSEG | NYSDEC# | | **Job Completed:** |
| **Contact:** Ken Lawrence | **PM:** Pole holes | | **Restoration Needed:** |
| **Location of Work:** Columbia terrace, Union NJ | | | |
| **Scope of Work:** Hydro excavation of Pole holes | | | |

| Truck # | Personnel | Title | Travel Start | At Work Site | Break | Left Work Site | Left Disp. Facility | Travel End | Total Hours |
|---|---|---|---|---|---|---|---|---|---|
| 200 | Dustin Garrabrant | Tech | 6 AM | 7 AM | 1/2 | 4 PM | 430 PM | 530 PM | 11 |
| 143 | Anthony Ruffino | Oper | 6 AM | 7 AM | 1/2 | 4 PM | 430 PM | 530 PM | 11 |

**Work Performed:**

Arrived on site met with John from Traffic Plan to go over scope of work and where to cone off work area. Set up equipm
started to hydro excavate soil for Pole holes. During hydro excavation we encountered water. Truck 143 left on site
Holes completed
65736,65737,65738,65739,65741,61942 Installed sono tube

| Type of Material | Total Qty | | Waste Location |
|---|---|---|---|
| **Liquid Drum** | | /Drum(s) | |
| **Solid / Debris Drum** | | /Drum(s) | |
| **Solid / Debris Bulk** | 5 | /Yds | Vauxhall Substation |
| **Liquid Bulk** | | /Gal | |

| Box # | Pick Up | Drop Off | Disposal Location |
|---|---|---|---|
| | | | |

| Materials | Equipment | Sub |
|---|---|---|
| Solids | On site | |
| | RT2017, RT1494,RT2898 | |
| | Boxes in Franklin Yard | |
| | RT3075, RT3407,RT3887 | |
| | RT1495, RT4008 | |

**WRS** _Anthony Ruffino (signature)_      **DATE** 8-28-2017      **CUSTOMER** _Ken Lawrence (signature)_
                                                                                                Signature
_Signature_

Anthony Ruffino                          Ken Lawrence

_Print Name_            _Approval_            _Print Name_

**"PROUD TO BE A UNION COMPANY"**



**WRS**
ENVIRONMENTAL SERVICES    V3.2

DEC PERMIT # 1A-415
EPA ID # NYR000188490

| | | | | |
|---|---|---|---|---|
| **Job #** 10549 | | **PO #** 5000004651 | | **Date:** 8-29-2017 |
| **Client:** PSEG | | **NYSDEC#** | | **Job Completed:** |
| **Contact:** Ken Lawrence | | **PM:** Pole holes | | **Restoration Needed:** |

**Location of Work:** Vauxhall Road, Union NJ

**Scope of Work:** Hydro excavation of Pole holes

| Truck # | Personnel | Title | Travel Start | At Work Site | Break | Left Work Site | Left Disp. Facility | Travel End | Total Hours |
|---|---|---|---|---|---|---|---|---|---|
| 200 | Dustin Garrabrant | Tech | 6 AM | 7 AM | 1/2 | 3 PM | 330 PM | 430 PM | 10 |
| 143 | Anthony Ruffino | Oper | 6 AM | 7 AM | 1/2 | 3 PM | 330 PM | 430 PM | 10 |

**Work Performed:**

Arrived on site met with John from Traffic Plan to go over scope of work and where to cone off work area. Set up equipm started to hydro excavate soil for Pole holes. During hydro excavation we encountered water. Truck 143 left on site
Holes completed
60071,60069,60068

| Type of Material | Total Qty | Waste Location |
|---|---|---|
| **Liquid Drum** | /Drum(s) | |
| **Solid / Debris Drum** | /Drum(s) | |
| **Solid / Debris Bulk** | 4 /Yds | Vauxhall Substation |
| **Liquid Bulk** | /Gal | |

| Box # | Pick Up | Drop Off | Disposal Location |
|---|---|---|---|
| | | | |

| Materials | Equipment | Sub |
|---|---|---|
| Solids | On site | |
| | RT2077, RT1494,RT2898 | |
| | Boxes in Franklin Yard | |
| | RT3075, RT3407,RT3867 | |
| | RT1495, RT4008 | |

**WRS** _Anthony Ruffino (signature)_
**Signature**
Anthony Ruffino
**Print Name**

**DATE** 8-29-2017
**Approval**

**CUSTOMER** _(signature)_
**Signature**
Ken Lawrence
**Print Name**

**"PROUD TO BE A UNION COMPANY"**

# Exhibit C

MID-L-006336-17 10/25/2017 3:48:42 PM Pg 24 of 28 Trans ID: LCV2017380237

WRS ENVIRONMENTAL SERVICES
17 OLD DOCK ROAD
YAPHANK, NY 11980-0000

0408-K278-DIRDEP
400
425

| 09/01/2017 | Direct Deposit |
|---|---|
| DATE | CHECK NO. |

Payrolls by Paychex, Inc.

PAY TO THE ORDER OF

ANTHONY RUFFINO
95A HALLS CROFT ROAD
FREEHOLD NJ 07728

Total Net Direct Deposit(s)
**$1398.15**
AMOUNT

VOID THIS IS NOT A CHECK.....................................................

SIGNATURE BANK

PAY ONLY 00 CTSCTS

**NON-NEGOTIABLE**
AUTHORIZED SIGNATURE(s)

TO VERIFY AUTHENTICITY OF THIS DOCUMENT, THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN ANGLE.

FOLD AND REMOVE — FOLD AND REMOVE

**PERSONAL AND CHECK INFORMATION**
ANTHONY RUFFINO
95A HALLS CROFT ROAD
FREEHOLD, NJ 07728

Soc Sec #: XXX-XX-XXXX    Employee ID: 425
Hire Date: 03/28/16
Status:
Filing Status:
Federal: Married, 2
State: NJ, Married, 2
Dept: 400

Pay Period: 08/23/17 to 08/29/17
Check Date: 09/01/17    Check #: Direct Deposit

**NET PAY ALLOCATIONS**

| DESCRIPTION | CURRENT ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 769.57 |
| CHECKING 1 | 1398.15 | 32655.69 |
| Net Pay | 1398.15 | 33425.26 |

**EARNINGS**

| DESCRIPTION | HRS/ UNITS | RATE | CURRENT ($) | YTD HRS/ UNITS | YTD ($) |
|---|---|---|---|---|---|
| HOURLY | 32.00 | 26.1500 | 836.80 | 998.00 | 25851.27 |
| OVERTIME | 11.00 | 39.2250 | 431.48 | | |
| OVERTIME | 4.50 | 34.6200 | 155.79 | 348.25 | 13411.68 |
| DOUBLETIME | 9.50 | 52.3000 | 496.85 | | |
| DOUBLETIME | 1.00 | 46.1600 | 46.16 | 51.50 | 2648.89 |
| HOLIDAY | | | | 32.00 | 824.32 |
| PERSONAL | | | | 8.00 | 208.08 |
| SICK | | | | 16.00 | 412.16 |
| VACATION | | | | 40.00 | 1030.40 |
| 3PSP NON-TAXA - M | | | | | 957.98 |
| 3PSP TAXABLE | | | | | 1676.02 |
| UNION 401K | | | -118.02 | | -2671.40 |
| TRAVEL ALLOWANC | | | | | 138.22 |
| HOURS WORKED | 58.00 | | | 1397.75 | |
| ADJ EARNINGS | | | 1849.06 | | 43527.64 |
| GROSS EARNINGS | 58.00 | | 1967.08 | 1493.75 | 46199.04 |

**DEDUCTIONS**

| DESCRIPTION | CURRENT ($) | YTD ($) |
|---|---|---|
| MISC DEDUCTION | | 99.99 |
| 3PSP MEDICARE | | 24.30 |
| 3PSP NET (OFFSE | | 1547.80 |
| 3PSP OASDI | | 103.92 |
| DUES | 11.99 | 266.29 |
| EXPENSE REIMBUR | | -1170.43 |
| MONTH DUES | 19.00 | 133.00 |
| SUPPLEMENTAL BE | | -45.70 |
| TOTAL | 30.80 | 959.17 |

**WITHHOLDINGS**

| DESCRIPTION | CURRENT ($) | YTD ($) |
|---|---|---|
| FEDERAL W/H | 217.84 | 4513.74 |
| OASDI | 121.96 | 2760.44 |
| MEDICARE | 28.52 | 645.55 |
| STATE W/H NJ | 51.79 | 987.20 |
| STATE SDI NJ | | 80.40 |
| STATE SUI NJ | | 128.14 |
| NJ EE WORKFORCE DEV | | 14.24 |

(CONT. ON NEXT PAGE)

| NET PAY | CURRENT ($) | YTD ($) |
|---|---|---|
| | 1398.15 | 33425.26 |

Payrolls by Paychex, Inc.
0408-K278 WRS ENVIRONMENTAL SERVICES ■ 17 OLD DOCK ROAD ■ YAPHANK, NY 11980-0000 ■

WRS ENVIRONMENTAL SERVICES
17 OLD DOCK ROAD
YAPHANK, NY 11980-0000

0408-K278-DIRDEP
400
425

| 08/25/2017 | This is not a check. |
| DATE | CHECK NO. |

PAY TO THE
ORDER OF

ANTHONY RUFFINO
95A HALLS CROFT ROAD
FREEHOLD NJ 07728

This is not a check.
**VOID**

AMOUNT

VOID THIS IS NOT A CHECK.................................................

**NON-NEGOTIABLE**
AUTHORIZED SIGNATURE(S)

Payrolls by Paychex, Inc.

TO VERIFY AUTHENTICITY OF THIS DOCUMENT THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN ANGLE

FOLD AND REMOVE                                                    FOLD AND REMOVE

| PERSONAL AND CHECK INFORMATION | WITHHOLDINGS | DESCRIPTION | CURRENT ($) | YTD ($) |
|---|---|---|---|---|
| ANTHONY RUFFINO | | NJ EMPLOYEE FLI | | 33.50 |
| 95A HALLS CROFT ROAD | | | | |
| FREEHOLD, NJ 07728 | | TOTAL | 647.93 | 8723.10 |

| | CURRENT ($) | YTD ($) |
|---|---|---|
| NET PAY | 1766.22 | 32027.11 |

# Exhibit D

**Section 6.04** All employees covered by this agreement who are unable to work for reasons of inclement weather or other reasons beyond the employees control, shall be paid four (4) hours pay for reporting in person at the headquarters.

**Section 6.05** When requested by the Employer, employees may be placed "on-call" during anticipated emergency work. These employees will hold themselves available so that they may be contacted and available within one-half (1/2) hour of the callout. For each twelve (12) hour period or part thereof during which an employee is "on-call" he shall receive two (2) hours pay at straight time.

**Section 6.06** When so elected by the employer multiple shifts of eight (8) hours for at least five (5) days duration may be worked. When so elected the effected employees shall receive an additional one dollar and fifty cents ($1.50) per hour as an "off-shift bonus". The off shift bonus will be added to straight time hours only.

## ARTICLE VII – JOB CLASSIFICATIONS AND WAGES

**Section 7.01** The Employees covered by this agreement shall be classified as follows:

<u>Working Foreman</u> – same qualifications as Technician, minimum five (5) years experience subject to appointment by WRS Environmental Services, Inc., additional qualification and certifications may be required, based on project.\

<u>Equipment Operator</u> – CDL Class A or B, hazmat license, operate vacuum truck, liquid vacuum truck, backhoe, excavator, skid steer, trailer vacuum, crane truck, 40 hour OSHA hazwoper, 40 hour OSHA construction industry safety and health certification, eight (8) hour DOT hazmat.

<u>Journeyman Asbestos/Lead Worker</u> – 32 hour asbestos handler training certification, OSHA lead awareness certification, 40 hour OSHA hazwoper, confined space certification, respiratory protection certification, First Aid/CPR training and certification.

<u>Asbestos/Lead Worker Helper</u> – regular training and updating in certifications listed for Journeyman Asbestos/Lead Worker. Must also complete 5,000 hours work experience and successfully complete all required training.

<u>Technician</u> – 40 hour OSHA hazwoper, confined space, 8 hour DOT hazmat, respiratory protection certification, asbestos awareness, lead awareness, minimum 4 years experience First Aid/CPR training, CDL B, 40 hour OSHA construction industry safety and health certification.

<u>Technician Helper</u> – 40 hour OSHA hazwoper, respirator protection certification, First Aid/CPR training, CDL permit, 40 hour OSHA construction industry safety and health certification.

Any additional job duties or classifications that are required during the term of this Agreement, and are not specifically stated in this Agreement, shall be established my mutual agreement between the Union and the Employer.

4

**Section 7.02**  The following wages shall apply to the above classifications.

| Class | 7.09.2015 | 7.09.2016 | 7.09.2017 |
|---|---|---|---|
| Working Foreman – *SUPER* | 28.06 | 28.62 | 29.19 |
| Heavy Equipment Operator | 25.38 | 25.76 | 26.15 |
| Journeyman Asbestos/Lead Worker | 36.37 | 37.10 | 37.84 |
| Asbestos/Lead Worker Helper: | | | |
| First 1,000 work hours | 29.09 | 29.67 | 30.26 |
| Second 2,000 work hours | 30.90 | 31.52 | 32.15 |
| Third 3,000 work hours | 32.74 | 33.39 | 34.06 |
| Technician | 22.19 | 22.63 | 23.08 |
| Technician Helper | 16.89 | 17.23 | 17.57 |

**\*Note:  When a Technician is in charge of a crew of four (4) up to a maximum of six (6) employees, inclusive of himself, the Technician base hourly wage shall increase \$.50 (fifty cents) per hour. When a crew complement includes an Operator or a Working Foreman, the \$.50 (fifty cents) increase to the Technician hourly base wage will not apply, and the Working Foreman or Equipment Operator will assume Crew Leader status.**

## ARTICLE VIII – HOLIDAYS

**Section 8.01**  All employees covered by this Agreement shall be entitled to the following holidays off with pay:

> New Year's Eve
> New Year's Day
> Martin Luther King Jr., Day
> President's Birthday
> Good Friday
> Memorial Day
> Independence Day
> Labor Day
> Thanksgiving Day
> Day after Thanksgiving .
> Christmas Eve
> Christmas Day

**Section 8.02**  All employees must have been employed under this Collective Bargaining Agreement within the territorial jurisdiction of Local Union 94 for at least ninety (90) days prior to the holiday to be eligible for that holiday pay, and must have worked the day before the holiday and the day after the holiday unless excused by mutual agreement between the employee and the Employer.

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-006336-17

**Case Caption:** RUFFINO ANTHONY  VS WRS ENVIRONMENTAL SE RVICES I

**Case Initiation Date:** 10/25/2017

**Attorney Name:** ARI R KARPF

**Firm Name:** KARPF, KARPF & CERUTTI, PC

**Address:** 3331 STREET RD TWO GREENWOOD SQUARE STE 128

BENSALEM PA 19020

**Phone:**

**Name of Party:** PLAINTIFF : Ruffino, Anthony

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

10/25/2017
Dated

/s/ ARI R KARPF
Signed

MID L 006336-17  10/26/2017 5:06:15 AM  Pg 1 of 1  Trans ID: LCV2017381705

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 645-4300
COURT HOURS  8:30 AM - 4:30 PM

              DATE:   OCTOBER 25, 2017
              RE:     RUFFINO ANTHONY  VS WRS ENVIRONMENTAL SE RVICES I
              DOCKET: MID L -006336 17

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON J R. CORMAN

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (732) 519-3728 EXT 3728.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: ARI R. KARPF
                              KARPF KARPF & CERUTTI PC
                              TWO GREENWOOD SQUARE
                              3331 STREET ROAD  SUITE 128
                              BENSALEM         PA 19020


ECOURTS